UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

DAWN C. WIGGINS,                             No. 10-11536

                    Debtor(s).
_____/

DAWN C. WIGGINS,

                    Plaintiff(s),

    v.                                  A.P. No. 11-1153

BARBARA HOUSLEY, et al.,

                    Defendant(s).
_____/

Memorandum After Trial
_____

I. Background

      Defendant Barbara Housley is a licensed real estate agent. In December, 2009, while working for broker Paragon Real Estate and Mortgage Service, Housley listed the property of plaintiff Dawn Wiggins at 1408 Lassen View Drive, Lake Almador, California, for sale. The property was encumbered for more than its value and was in foreclosure, but Housley believed she could earn a

1

commission by arranging a "short" sale, as was common at the time. On March 25, 2010, while the listing was still active, Housley left Paragon's employ and moved her license to broker and defendant DPPM, Inc., dba Zephyr Real Estate.

The foreclosure sale on the Lake Amadore property was set for April 28, 2010. On April 14, 2010, Housley sent Wiggins an email stating:

> There is a person that can delay your sale for 1yr!
>
> He was referred to his name is Roman Meach [SSN deleted]
>
> He charges $300 for his fee and $280 for filing!
>
> Let me know what you want to do , if not I need your 1099's to dot he modification,
>
> your house is to sale on April 28, 2010!

At the time, Wiggins was on vacation in Europe on a cruise ship. She emailed Housley that she was unable to do anything from there and suggested Housley contact others. Housley responded by email on April 20, 2010:

> They don't have it!
>
> They can't help me! It private information I can only discuss with you or Stephanie!
>
> Can I file a bankruptky that never goes to court to kept you from losing Ardamore
>
> property, it is going to auction on the 28 of April!
>
> I am trying to get the sale delayed, but it may not happen!
>
> The banruptky it cost $300.00 plus filing, I get the information filed out and you can fedex back to him before the
>
> 28, you will be back on the 24th?

On April 21, Wiggins responded that she would not return until April 28th and "I can't sign anything." Later that day, Housley responded:

> I just need to know can I file the bankrupky for you?, to save the property, and it will
>
> never go to court, to save the Amador, it is only for 1 yr, and you won't have to make any
>
> payments until you get things figured out?
>
> I can pay the money for you until you return, I will see if Ron will sign for you or if you

2

> give me permission I can sign , I rather not get Ron involved!
>
> Please let me know asap!

Wiggins then responded by email that "I am okay with you doing that if it is legal." Housley responded:

> Yes, it is legal I did for Melville property, and the good thing you can get rid of the second through negioting, then we still kept trying to get a modification, and they are more motivated when you file a chapter 13, but he kept delaying it for a year and no mortgage pmnts, and it never goes to court, so just to give you time to reorganize!

Housley then signed and filed a false Chapter 13 bankruptcy petition in Wiggins' name, evidently paying the filing fee herself.[1] Not only was the signature false, but the list of creditors falsely represented there were no creditors other than the foreclosing secured creditor.

Housley filed the false petition on April 27, 2010. The case was dismissed on May 14, 2010, due to failure to file the schedules, statement of affairs and plan as required by the Federal Rules of Bankruptcy Procedure.

II. Liability under § 110(i)(1)

Wiggins has brought this adversary proceeding against Housley and Zephyr pursuant to § 110(i)(1) of the Bankruptcy Code, which provides that a petition preparer is liable to a debtor for actual damages, statutory damages of $2,000.00, and reasonable attorney's fees for violating any of the provisions of § 110 or committing a fraudulent or deceptive act. The court has no difficulty finding Housley committed numerous such acts. She falsely told Wiggins that the foreclosure would be delayed a year, that she would not have to go to court, and that she could file the petition for her. She then signed the false petition and filed it with the court. She also violated numerous technical

---

[1] The exact details are unclear, as Housley asserted her Fifth Amendment rights and refused to testify.

3

requirements of petition preparers under § 110.

Housley argues that she is not subject to § 110 because she was not a "petition preparer" as defined in § 110(a)(1) because she did not prepare the petition and did not receive compensation. The court finds no merit to these arguments.

As to who prepared the petition, Housely was clearly involved in the process. A person need not be the one who actually does the preparation in order to be subject to § 110, if the persons is closely involved in the preparation process. *In re Moore*, 290 B.R. 287, 294 (Bankr. E.D.N.C. 2003). Moreover, Housley literally had a hand in the preparation by signing the petition. This made her just as much a preparer as the person who prepared the rest of the document.

The evidence established that Housley was acting for compensation. If the property was lost to foreclosure, she would get nothing. A sale, even a short sale, would result in a commission. This is why Housley so urgently wanted to file a bankruptcy for Wiggins. In addition, Housley collected $300.00 from Wiggins for "Meach." A petition preparer cannot avoid § 110 by arguing that he or she was merely collecting for other persons, or did not receive money directly from the debtor, or collected money for other services. 2 Collier on Bankruptcy (16th Ed.), ¶ 110.02[1]; *In re Gaftick*, 333 B.R. 177, 184 (Bankr. E.D.N.Y. 2005). The court finds that the promise of a commission upon the sale of property is by itself enough to meet the compensation requirement.

III. Damages

The court agrees with Housley and Zephyr that Wiggins had very poor credit even before the abortive bankruptcy and declines to award any damages on that theory. However, the court disagrees with both sides as to damages for cancellation of a mortgage modification agreement on Wiggins' home.

Before the bankruptcy filing, Wiggins had just entered into a mortgage modification agreement with the lender Bank of America on her home in Sebastopol, California. Because of the bankruptcy, the agreement was cancelled and Wiggins was forced to pay over $100,000.00 in cash to reinstate her

4

1  original loan. The agreement would have lowered Wiggins' monthly payments by about $3,300.00 per
2  month for a few years, saving her about $75,000.00 during that time and she claims this amount as
3  damages. Defendants point out that her savings during this time would be back-loaded to the end of
4  the mortgage and for that reason argue that there were no damages at all. The court finds neither
5  argument convincing.

6  The mortgage modification agreement had some real value in that it afforded Wiggins
7  considerable relief for a period of years. If she had been asked to pay a modest fee, say $100.00, as a
8  cost of the agreement she would have readily agreed to do so. On the other hand, a fee of $50,000.00
9  would clearly not have justified the benefits of the agreement. Her true damages must be somewhere
10 between those numbers. Considering the significant relief the agreement would have afforded her for
11 a significant period of time and the possibility, however optimistic, that she could refinance by the end
12 of the relief period, the court finds that the agreement was worth at least $10,000.00 to Wiggins and
13 will therefore fix her actual damages in that amount.

14

15 IV. Liability of Zephyr

16 A real estate broker is liable to third parties for the fraud of his or her employee committed in
17 the course and scope of employment. 2 Miller & Starr, Cal.Real.Est.3d § 3:36 ["If a salesperson
18 commits fraud on a third person, the employing broker is liable under the doctrine of respondeat
19 superior."]. Zephyr argues that Housley's venture into bankruptcy was outside the scope of her
20 employment and therefore it is not responsible. However, the court finds that her activity was well
21 within the course and scope of her employment. Her only contact with Wiggins was as the employee
22 of her broker, and Housley's activities were motivated only by her desire to earn a commission for her
23 broker in which she would share. That Housley acted in excess of her authority or contrary to the
24 wishes of Zephyr is immaterial. 3 Witkin, Summary of California Law (10th Ed.), Agency and
25 Employment § 165, p.208.

26 Moreover, the evidence (including testimony from Zephyr's own expert) established that

5

Zephyr was itself negligent. Zephyr hired more than 60 real estate salespersons, which was far more than it could effectively supervise. What little supervision there was Zephyr delegated largely to a lower-level and unlicensed employee. In addition, an email sent by Housley to Zephyr on April 22, 2010, should have set off all sorts of alarms but did not. The email revealed that Housley was handling loan modifications, which is forbidden by Zephyr's own written rules for its salespersons, and that Housley was using an email address identifying her previous broker.[2]

V. Conclusion

The court finds that Housley is liable to Wiggins pursuant to § 110(i)(1) in the amount of $10,000.00 in actual damages, $2,000.00 in statutory damages, and reasonable attorneys' fees. Since Housley has admitted in her answer that this proceeding is a core proceeding and since it is based only on bankruptcy law, the court will enter a final judgment against her. The court finds no just reason for delay and will accordingly enter a separate judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure against only her and defendant Roman Meacham, whose default was previously entered.

The court finds that Zephyr is liable to Wiggins in the amount of $10,000.00 based on state law. Because Zephyr did not admit core status and because damages are based only on state law, the court will not enter a final judgment as to Zephyr and will instead make only proposed findings and conclusions to the district court pursuant to 28 U.S.C. § 157(c)(1).

This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and FRBP 7052. Counsel for Wiggins shall submit an appropriate form of judgment forthwith as to Housley and Meacham. The case shall proceed as to Zephyr in accordance with Rule 9033 of the

---

[2] Zephyr's responsible agent testified that he gave Housley oral permission to handle loan modifications notwithstanding its written policy. He did not satisfactorily explain his reasons for this deviation. The court infers that Zephyr was so interested in adding salespersons that it was willing to overlook violations or deviations from its official policy.

6

Federal Rules of Bankruptcy Procedure.

Dated: September 21, 2012

Alan Jaroslovsky
U.S. Bankruptcy Judge

7